UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL A. MILKE,<br><br>      Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>      Defendant. | Case No. C12-580-JCC-BAT<br><br>**REPORT AND RECOMMENDATION** |

Michael A. Milke seeks review of the denial of his Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") applications. Mr. Milke contends the ALJ erred by (1) finding borderline intellectual functioning and dementia were not severe impairments at step two; (2) failing to include limitations arising from these impairments in assessing his residual functional capacity ("RFC"); and (3) rejecting the opinions of Dr. Margaret Cunningham, Ph.D. Dkt. 18 at 1-2. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings pursuant to sentence four.

**BACKGROUND**

On May 2, 2008, Mr. Milke applied for DIB and SSI alleging disability as of June 15,

REPORT AND RECOMMENDATION - 1

2006.  Tr. 155, 160.  His applications were initially denied in August 2008.  On March 25, 2009, he reapplied for DIB and SSI alleging disability as of August 31, 2007.  Tr. 169, 176.  After conducting a hearing on November 29, 2010, the ALJ issued a written decision finding Mr. Milke not disabled.[1]  The Appeals Council denied Mr. Milke's request for review making the ALJ's decision the Commissioner's final decision.  Tr. 1-6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:**  Mr. Milke had not worked since August 31, 2007.

**Step two:**  Mr. Milke had the following severe impairments: diabetes, hepatitis B, personality disorder, and polysubstance abuse.

**Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity:**  Mr. Milke could perform light work as follows: He could lift or carry 20 pounds occasionally and 10 pounds frequently. He could stand or walk with normal breaks about six hours in an eight-hour workday.  He could sit with normal breaks about six hours in an eight-hour workday.  He has the mental capability to adequately perform the mental activities generally required by competitive, remunerative work as follows: He could perform simple one- to two-step instructions of jobs at a level svp 1 and 2 or unskilled work; he has average ability to perform sustained work activities within customary tolerances of employer's rules for sick leave and absences; he can make judgments on simple work-related decisions and respond appropriately to supervision, coworkers and deal with changes in a stable work environment.

**Step four:**  Mr. Milke could not perform his past work.

**Step five:**  As there are jobs Mr. Milke can perform, he is not disabled.

Tr. 22-34.

---

[1] The Commissioner does not dispute Mr. Milke's contention that because the ALJ in adjudicating the 2009 application reached the merits of whether Mr. Milke was disabled as of August 31, 2007, and further did not state his review of evidence pertaining to Mr. Milke's 2008 applications was not a reopening of the denials of those applications, that the ALJ de facto reopened the initial denials of the 2008 applications.  *See* Dkt. 18 at 17 and Dkt. 22 at 11.
[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

# DISCUSSION

**A.     The ALJ's step two assessment**

Mr. Milke contends the ALJ erred by failing to find borderline intellectual functioning and dementia were severe impairments at step two. Dkt. 18 at 6, 11. At step two, Mr. Milke had the burden to show each of these conditions was first a medically determinable impairment, and second that each condition was a severe impairment for at least 12 continuous months. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 404.1520(a)(4)(ii). A mental impairment is medically determinable if established by medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. § 404.1508. Laboratory findings are psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques. 20 C.F.R. § 404.1528(c).

Here, examining doctor Margaret Cunningham, Ph.D., administered a Wechlser Adult Intelligence Scale-IV test and based on the results opined Mr. Milke had borderline intelligence. Tr. 434. Dr. Cunningham further opined "his ability to comprehend and remember new information is limited. This will make it difficult for him to function both socially and in the workplace." Tr. 435. Examining doctor Roger Meinz, Ph.D., administered a Wechlser Memory Scale – III test and based on the results opined Mr. Milke "likely presents with dementia." Tr. 364-65. Dr. Milke also noted he had "serious concerns about the underlying dementia process," and that Mr. Milke "has had difficulties on the job because he couldn't remember what he was told to do." Tr. 365. The record thus establishes there were "laboratory findings" which established borderline intellectual functioning and dementia were medically determinable impairments, and that these impairments had more than a minimal effect on Mr. Milke's ability

to work.[4]  Based on the medical evidence, the ALJ erred, at step two, in failing to find borderline intellectual functioning and dementia were severe impairments.

This error was not harmless.  An ALJ must assess all the relevant evidence, including medical reports and opinions to determine what capacity the claimant has for work.  *See* 20 C.F.R. § 416.945(a).  Here, the ALJ failed to acknowledge, discuss or evaluate either of the two severe impairments.  The Commissioner contends this failure is of no moment.  The Commissioner first argues Dr. Cunningham's test results may not be valid, Mr. Milke has not shown the ALJ's failure to discuss borderline intellectual functioning affected the outcome of the ALJ's determinations, and the ALJ's findings that Mr. Milke can follow simple instructions are supported by the record.  Dkt. 22 at 9.

These arguments are unpersuasive.  The ALJ did not discuss borderline intellectual functioning and thus did not evaluate the validity of the Wechlser Adult Intelligence Scale-IV test the doctor administered.  The Commissioner's arguments regarding the test results are thus post-hoc rationalizations that this Court cannot rely on to affirm the ALJ.  *See Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001).  Because the ALJ did not discuss borderline intellectual functioning, the Commissioner's other contentions essentially argue the ALJ implicitly, and for proper reasons, assessed borderline intellectual functioning in assessing Mr. Milke's RFC.  However, an ALJ's implicit rejection is legally insufficient.  Here, the ALJ provided no rationale for discounting the findings that Mr. Milke has borderline intellectual functioning and thus erred.  *See Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990) (mere summarization and implicit rejection of treating physician's opinion does not suffice).

---

[4] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (An impairment can be found "not severe" only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work).

REPORT AND RECOMMENDATION - 4

The Commissioner next argues the ALJ's failure to discuss dementia was harmless because the ALJ discussed Dr. Meinz's opinions, and accounted for limitations caused by dementia. Dkt. 22 at 10-11. There is no dispute the ALJ did not mention or discuss dementia. As such, the Commissioner's arguments again rest on the notion the ALJ implicitly considered and properly accounted for dementia in assessing Mr. Milke's RFC. But as implicit rejections are legally insufficient, the ALJ erred and the error was not harmless.

In sum, an ALJ is required to consider all relevant evidence bearing on a claimant's ability to perform work. After due consideration and for proper reasons, an ALJ may discount the impact of any severe impairment on claimant's RFC. Here, as the ALJ failed to acknowledge, discuss or provide any analysis of borderline intellectual functioning or dementia, the ALJ erred and the error was not harmless. On remand pursuant to sentence four, the ALJ should be directed to deem these two conditions to be severe impairments for purposes of step two and proceed to the other steps as appropriate.

**B.      The ALJ's assessment of Dr. Cunningham's opinions**

Mr. Milke contends, and the Court agrees, the ALJ erred in assessing Dr. Cunningham's opinions regarding Mr. Milke's "processing speed" and severe limitations in learning new tasks, making decisions, relating to co-workers and tolerating the pressures of the normal work setting. Dkt. 18 at 14. The ALJ erred because these opinions are linked to the doctor's finding that Mr. Milke has borderline intellectual functioning, the effects of which the doctor summarized as follows:

"Michael has low IQ. His processing speed is extremely low. His ability to comprehend and remember new information is limited. This will make it difficult for him to function both socially and in the workplace." Tr. 435. Because the ALJ failed to acknowledge, discuss or

analyze borderline intellectual functioning, the ALJ erred in assessing Dr. Cunningham's opinions.  On remand, the ALJ should deem borderline intellectual functioning to be a severe impairment and reassess Dr. Cunningham's opinions in light of that severe impairment, and also develop the record as appropriate.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings pursuant to sentence four.

On remand, the ALJ should (1) deem borderline intellectually functioning and dementia to be severe impairments at step two; (2) reassess Dr. Cunningham's opinions; (3) develop the record as appropriate; and (4) proceed to the remaining steps as necessary.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **December 10, 2012.**  If no objections are filed, the matter will be ready for the Court's consideration on **December 14, 2012**.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed twelve pages.  The failure to timely object may affect the right to appeal.

DATED this 26th day of November, 2012.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 6